FREDRIC F. GRUBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gruber v. Commissioner
Docket No. 27892-91
United States Tax Court
T.C. Memo 1994-508; 1994 Tax Ct. Memo LEXIS 514; 68 T.C.M. (CCH) 923; October 12, 1994, Filed *514 Decision will be entered for respondent. Fredric F. Gruber, pro se. For respondent: Willie Fortenberry, Jr.
CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency of $ 12,432 in petitioner's 1986 Federal income tax. The issue for decision is whether petitioner is entitled to use the 10-year averaging method under section 402 on an amount received by him in 1986. We hold that he is not. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, first and second supplemental stipulations of facts, and attached exhibits are incorporated herein by this reference. Petitioner resided in Heathrow, Florida, at the time the petition was filed. Petitioner, born July 16, 1931, began working for Associated Coca-Cola Bottling Company, Inc., (Associated Bottling) in 1963. Associated Bottling and several of its wholly owned subsidiaries, including Florida Coca-Cola Bottling Company (Florida Bottling), Philadelphia *515 Coca-Cola Bottling, and Terre Haute Coca-Cola Bottling, were franchisees of the Coca-Cola Company, a licensor of franchises for bottling and marketing Coca-Cola and other soft drinks. Associated Bottling was a publicly traded corporation with approximately 57 percent of its stock owned by Associated Coca-Cola Bottling Plants, Inc., later known as Root Company. On March 1, 1964, Associated Coca-Cola Bottling Plants, Inc. established a qualified pension plan and an exempt trust (within the meaning of sections 401(a) and 501(a)) for itself and its subsidiaries, which eventually were called The Associated Master Defined Benefit Pension Plan and Trust (the Old Plan). Petitioner began participation in the Old Plan on October 1, 1965, after 2 years of service with Associated Bottling. Associated Bottling assumed primary liability for the Old Plan on December 31, 1965. On July 30, 1982, the Coca-Cola Company purchased Associated Bottling and its wholly owned subsidiaries. On approximately December 31, 1982, the Coca-Cola Company sold Florida Bottling and certain assets of Associated Bottling to SID Company of Northern Florida, Inc. (SID), a subsidiary of JTL Corporation. After the *516 sale, SID changed its name to Florida Coca-Cola Bottling Company (Florida Coca-Cola). Prior to the sale, petitioner was vice president and treasurer of Associated Bottling. Subsequently, from January 1, 1983, until his employment was terminated on August 31, 1983, petitioner was assigned to Coca-Cola USA, a division of the Coca-Cola Company, first as a financial consultant and then as vice president and controller. He remained an employee of Associated Bottling during his assignment to Coca-Cola USA. In conjunction with the sale to SID, the Coca-Cola Company agreed to establish a new pension plan, comparable to the Old Plan, for the benefit of Associated Bottling's active employees, vested terminated employees, and employees retiring on or after January 2, 1982. Consequently, effective October 1, 1982, the Coca-Cola Company established a successor plan, the Employees' Retirement Plan of Associated Coca-Cola Bottling Co., Inc. (the New Plan). The Coca-Cola Company agreed to transfer sufficient assets from the Old Plan to the New Plan to fund all benefits accrued as of September 30, 1982. Florida Coca-Cola agreed to administer and assume obligations arising under the New Plan. *517 The New Plan provided for a different early retirement benefit than that provided under the Old Plan. Under the New Plan, early retirement benefits were actuarially reduced, removing the "subsidized early retirement benefit" that had been provided under the Old Plan. The effect of this change was to reduce the early retirement benefit for a fully vested participant who retired at age 55 to approximately one-half the benefit that would have been provided under the Old Plan. Several employees of Associated Bottling, including petitioner, protested, and the Coca-Cola Company agreed to transfer additional funds to Florida Coca-Cola to cover the subsidized early retirement benefits of a small number of Associated Bottling employees, including petitioner. The section of the New Plan that governed benefits paid to early retirees, section 4.03, was amended on April 25, 1984, effective January 1, 1983, by removing the actuarial reduction for early retirement benefits. Petitioner's employment with Associated Bottling was terminated on August 31, 1983. Petitioner was 52 years of age on that date and, consequently, was not eligible under the New Plan for either a normal retirement allowance, *518 which was for employees retiring at age 65, or an early retirement allowance, which was for employees retiring at age 55. Petitioner was categorized as a "terminated vested participant," whose retirement benefits were determined under section 6.05 of the New Plan and not under section 4.03. Under the New Plan, as under the Old Plan, benefits for terminated vested participants were subject to an actuarial reduction. Although section 6.05 of the New Plan, entitled "Termination of Employment," was amended on April 25, 1984, effective January 1, 1983, the actuarial reduction of benefits for terminated vested participants was not removed. Section 6.05 of the New Plan, as amended, states, in pertinent part: If the employment of a Participant is terminated with the Employer or Affiliate prior to retirement, other than by death, but after he has completed at least ten (10) Vesting Years of Service, he shall receive a monthly retirement allowance determined as hereinbelow provided, commencing on his normal retirement date * * *. * * * A terminated Participant who has been credited with at least fifteen (15) Years of Service may elect by written notice to the Committee, to have his *519 otherwise deferred monthly retirement allowance commence on the first day of the month coincident with or next following his attainment of the age of fifty-five (55). The amount of the monthly retirement allowance payable at such earlier commencement date shall be the actuarial equivalent of the Participant's Accrued Benefit as of his date of Termination of Employment which shall be determined on the basis of the interest and mortality assumptions which are being used as of the date of such Participant's Termination of Employment. * * *
Under section 6.05 of the New Plan, petitioner was entitled to a monthly deferred retirement allowance of $ 2,472.80 commencing when he reached age 65. Because he was credited with at least 15 years of service, he could elect to receive his retirement allowance at age 55, but it had to be reduced in accordance with the provisions of section 6.05 of the New Plan, resulting in a monthly retirement allowance of $ 1,236.40. Despite the requirements of section 6.05 of the New Plan, petitioner was informed prior to his 55th birthday that, since the Coca-Cola Company had funded a subsidized early retirement benefit for him, he would be eligible to *520 receive a monthly allowance of $ 2,472.80 at age 55. However, John D. Veale (Veale), the administrator of the New Plan, and Joel W. Richardson, Jr. (Richardson), an attorney for Florida Coca-Cola, explained to petitioner that a subsidized early retirement benefit could not be paid to a terminated vested participant under the terms of the New Plan, as the New Plan only provided such a benefit to persons who had satisfied the requirements for early retirement, including working until age 55. Veale and Richardson also explained that because the Coca-Cola Company had not funded a subsidized early retirement benefit for all terminated vested participants, the New Plan could not be amended to provide the subsidized benefit without substantial additional cost. Consequently, Veale and Richardson informed petitioner that Florida Coca-Cola would pay him his deferred retirement allowance of $ 1,236.40 from the New Plan, and would pay him a subsidized retirement allowance of the same amount from funds outside the New Plan. Petitioner could elect at age 55 to receive both retirement allowances in lump-sum payments of $ 138,306.18 each. Richardson informed petitioner that the lump-sum payment *521 made from funds outside the plan would not be eligible for the 10-year averaging method. On July 16, 1986, petitioner's 55th birthday, he notified the administrators of the New Plan of his election to receive his vested early retirement benefits in a lump-sum payment. In August 1986, petitioner received 2 checks, each for $ 138,306.18, for a total amount of $ 276,612.36. One check, the lump-sum distribution of early retirement benefits from the New Plan, was received from the Trust Company Bank, Atlanta, Georgia; the other check was received from the general funds of Florida Coca-Cola. In 1987, Florida Coca-Cola issued a Form 1099-MISC to petitioner for 1986, reporting $ 138,306.18 of nonemployee compensation. On his 1986 income tax return, petitioner computed the tax on both payments on Form 4972 in accordance with the 10-year averaging method for lump-sum distributions as set forth in former section 402(e)(1). OPINION Respondent determined that the distribution of $ 138,306 received by petitioner in 1986 from the general funds of Florida Coca-Cola is ordinary income, not subject to the 10-year averaging method of section 402(e). Petitioner bears the burden of proving that *522 respondent's determination is incorrect. Rule 142(a); . Section 61(a) provides that gross income includes income from whatever source derived. A distribution from a qualified plan is included in gross income under section 402(a), but section 402(e) provides a method for 10-year averaging of lump-sum distributions from qualified plans. Section 402(e)(4)(A) defines a lump-sum distribution as a distribution from a trust which is part of a plan described in section 401(a) and which is exempt from tax under section 501, or from a plan described in section 403(a). There is no dispute that the check received from the general funds of Florida Coca-Cola did not come from a qualified plan. Petitioner maintains that both payments of $ 138,306 that he received in 1986 represented nonforfeitable vested benefits accrued for him while a participant in the Old Plan. Therefore, he argues, he is entitled to use the 10-year averaging method for reporting both payments. At the time of petitioner's departure from Associated Bottling in 1983, he had not reached age 55. Consequently, he was treated as a terminated vested participant, *523 rather than as an early retiree. Although his benefits were governed by the New Plan, the record makes clear that under the Old Plan, as under the New Plan, petitioner's benefits as a terminated vested participant would have been subject to an actuarial reduction. Petitioner was paid the full benefit to which he was entitled under the provisions of the New Plan; the additional benefit he received in the form of a subsidized retirement allowance could not be paid from the New Plan. In any event, petitioner's argument asks that we overlook the fact that the payment made from the general funds of Florida Coca-Cola was not made from a qualified plan and simply treat it as if it were. We are unable to do that. The $ 138,306 received by petitioner in 1986 came from the general funds of Florida Coca-Cola, and thus does not qualify as a lump-sum distribution under section 402(e)(4)(A). We hold that the $ 138,306 from the general funds of Florida Coca-Cola is ordinary income, not subject to the 10-year averaging method of section 402(e). Respondent's determination is sustained. To reflect the foregoing, Decision will be entered for respondent.